# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

United States of America,

    Plaintiff

v.

Willie Allen Dillard,

    Defendant

Case No.: 2:09-cr-00057-JAD-GWF

**Order Denying Motion to Dismiss and Ordering Further Briefing**

[ECF No. 75]

After serving 10 years in state prison, Willie Allen Dillard was transferred to federal custody to begin serving his 15-year sentence for being a felon in possession of a firearm. In his first days in federal custody, he learned of the United States Supreme Court's holding in *Johnson v. United States*.[1] Dillard was unintentionally left off the list of prisoners potentially eligible for relief under *Johnson* and who were therefore appointed counsel by this District. He immediately contacted the Office of the Federal Public Defender (FPD), which appeared on his behalf and filed Dillard's petition for relief under 28 U.S.C. § 2255.

The government moves to dismiss Dillard's § 2255 motion as untimely. Dillard responds that the applicable statute of limitations was equitably tolled because he didn't know he was potentially entitled to *Johnson* relief until recently, and once he found out, he immediately took action to vindicate his rights. Because of the extraordinary circumstances that led to Dillard failing to learn about *Johnson* and Dillard's post-discovery diligence, I deny the government's motion to dismiss. But because the parties have not fully addressed the merits of Dillard's § 2255 motion, I order additional briefing.

---

[1] *Johnson v. United States*, 135 S. Ct. 2551 (2015).

**Background**

On March 9, 2011, Dillard pled guilty, without a plea agreement, to a single charge of being a felon in possession of a firearm.[2] Dillard's sentence was enhanced under the Armed Career Criminal Act (ACCA)[3] because he had three prior convictions for Nevada robbery,[4] which the US Probation Office deemed a "violent felony" under the ACCA. The ACCA raised the 10-year maximum statutory sentence for Dillard's charge to life imprisonment and imposed a 15-year statutory minimum sentence. With the enhancements, Dillard's guideline range was 180–210 months, based on a total offense level of 30 and criminal history category of VI.[5] Without the enhancement, Dillard's guideline range would have been 77–96 months, based on a total offense level of 21 and criminal history category of VI.[6]

Dillard objected to the ACCA sentencing enhancement, which the sentencing court overruled, and he received a 180-month sentence.[7] The Ninth Circuit affirmed Dillard's sentence on direct appeal in 2012.[8] Following his federal sentencing, Dillard served an unrelated state sentence in Nevada state custody but did not receive credit towards his federal sentence.

At the time Dillard was sentenced, the ACCA defined a "violent felony" as:

> Any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult that—

---

[2] ECF Nos. 47, 63.
[3] ECF No. 62 at 5.
[4] Nev. Rev. Stat. § 200.380.
[5] PSR ¶ 60.
[6] PSR ¶¶ 13–22.
[7] ECF No. 56, 62.
[8] ECF No. 66.

2

| | (i) | has as an element the use, attempted use, or threatened use of physical force against the person of another; or |
|---|---|---|
| | (ii) | is burglary, arson, or extortion, involves the use of explosives, or otherwise involves the conduct that presents a serious potential risk of physical injury to another.[9] |

Subsection (i) is known as the "elements clause"; subsection (ii)'s list of offenses is known as the "enumerated clause"; and the final phrase in subsection (ii)—"otherwise involves conduct that presents a serious potential risk of physical injury to another"—is known as the "residual clause." On June 26, 2015, the Supreme Court struck down the residual clause as unconstitutionally vague.[10] Then, on April 16, 2016, the Supreme Court held in *Welch v. United States* that *Johnson* announced a new "substantive rule" that applies retroactively to cases on collateral review.[11]

Defendants eligible for relief under *Johnson* had one year from the date it was decided to file a § 2255 motion for collateral relief.[12] But because only a few months remained by the time the Court decided *Welch*, the Chief Judge of this district appointed the FPD to represent any convicted defendant who had been previously entitled to the appointment of counsel or was then indigent and might have a claim under *Johnson*.[13] For those defendants, the order directed the FPD to file an abridged § 2255 motion before the one-year statute of limitations expired and then supplement those motions no later than December 26, 2016.[14] Included with that order was a list

---

[9] 18 U.S.C. § 924(e)(2)(B).
[10] *Johnson*, 135 S. Ct. at 2563.
[11] *Welch v. United States*, 136 S. Ct. 1257 (2016).
[12] 28 U.S.C. § 2255(f).
[13] ECF No. 72-1.
[14] *Id.* at 3.

3

of defendants (compiled by the United States Sentencing Commission) who were potentially eligible for *Johnson* relief.[15] For reasons that neither party explains, Dillard was left off this list and so was not appointed counsel.[16]

Dillard completed his state sentence in November 2018 and was transferred to federal custody to begin serving his federal sentence. He arrived at FCI Victorville on January 31, 2019, where he first learned about *Johnson*. He immediately wrote to the FPD for assistance. The FPD received his letter in February, reviewed his case, and filed a notice of appearance the next day.[17] About two weeks later, the FPD filed Dillard's § 2255 motion.[18] When this case was reassigned to me, I ordered the government to respond,[19] and two days later, the government moved to dismiss Dillard's § 2255 motion as untimely.[20]

## Discussion

The parties agree that, absent equitable tolling, Dillard's petition for relief is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that a § 2255 motion be filed within one year of the Supreme Court recognizing a new retroactive rule,[21] and Dillard moved for relief nearly three years after *Johnson*. Where the parties disagree is in the application of equitable tolling to Dillard's case. The government argues that Dillard did not

---

[15] *Id.* at 2 n.1.

[16] Dillard speculates that he was left off the list because he was in state custody at the time the list was compiled and notes that at least one other defendant who was in state custody when the list was compiled was also omitted. ECF No. 72 at 8 n.1. The government does not proffer an explanation, but also does not dispute that Dillard should have been on the list.

[17] ECF No. 71.

[18] ECF No. 72.

[19] ECF No. 74.

[20] ECF No. 75.

[21] 28 U.S.C. § 2244(d)(1)(A).

diligently pursue his rights and should not be allowed to bring his motion after nearly three years of inaction. Dillard responds that he didn't act because he didn't know that there was an available avenue of relief and that he immediately took action once he found out about *Johnson*.

AEDPA's one-year statute of limitations is subject to equitable tolling.[22] A litigant seeking equitable tolling bears the burden of establishing two elements: (1) "'that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing."[23] "Courts take a flexible, fact-specific approach to equitable tolling."[24]

The government first argues that Dillard's ignorance of the law is not a basis for equitable tolling. But this is not an ordinary ignorance-of-the-law situation. When the Supreme Court decided *Welch* in March 2016, opening the door for collateral attacks based on *Johnson*, very little time remained for a defendant to file a § 2255 motion. Many defendants who were potentially eligible for relief were represented at trial by appointed counsel, sentenced many years before, and no longer had counsel actively representing them. To ensure that these defendants were able to timely file, this District issued a general order appointing counsel to eligible prisoners based on the list from the Sentencing Commission. Dillard was left off the list for reasons unknown and, because he was in state custody, didn't hear about this new avenue of potential relief from others receiving assistance from the FPD's office. Being left off the list meant that Dillard didn't know he was potentially eligible for relief and no petition was filed on his behalf by the FPD. While simple ignorance of the law alone is not an extraordinary

---

[22] *Holland v. Florida*, 560 U.S. 631, 649 (2010).
[23] *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).
[24] *Gibbs v. Legrand*, 767 F.3d 879, 887 (9th Cir. 2014).

5

circumstance, I must use a "flexible" standard that accounts for all the circumstances faced and the cumulative effect of those circumstances when determining whether AEDPA's statute of limitations should be tolled.[25] Applying that flexible standard here, Dillard faced extraordinary circumstances beyond his control that prevented him from timely seeking § 2255 relief after *Johnson*.

But the government's main argument against equitable tolling is that Dillard cannot show that he took any steps to diligently pursue his rights. "[T]he standard of diligence required of a petitioner seeking equitable tolling is 'reasonable,' not 'maximum feasible' care."[26] "[R]easonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief."[27] Rather, "[i]t requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances."[28]

When faced with circumstances similar to Dillard's, district courts have found that AEDPA's statute of limitations should be tolled. In *United States v. Wilson*, the District Court for the District of Columbia held that equitable tolling applied to a prisoner's petition filed one day late.[29] Wilson, like Dillard, pled guilty to being a felon in possession of a firearm and was sentenced under the ACCA's residual clause.[30] When *Welch* was decided, the D.C. District Court appointed the local FPD to "represent any convicted defendant who previously had been

---

[25] *Holland*, 560 U.S. at 650.
[26] *Gibbs*, 767 F.3d at 889 (quoting *Holland*, 560 U.S. at 653)
[27] *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011).
[28] *Id.*
[29] *United States v. Wilson*, 249 F. Supp. 3d 305, 324 (D.D.C. 2017).
[30] *Id.* at 309.

6

entitled to the appointment of counsel and might have a claim under *Johnson* and *Welch*."[31] Wilson didn't appear on the Sentencing Commission's list of potentially eligible prisoners and the FPD was unaware of his eligibility until the day after petitions were due.[32] The FPD filed an abridged § 2255 motion that day to preserve Wilson's right to challenge his sentence and then filed a supplemental motion several months later.[33] The D.C. District found that being left off the list was an extraordinary circumstance outside Wilson's control that entitled him to equitable tolling.[34]

But even when faced with a delay longer than the single day in *Wilson*, district courts have tolled AEDPA's statute of limitations. In *Salinas v. United States*, the District Court for the Northern District of Texas found that tolling applied for a prisoner who filed a § 2255 motion under *Johnson* a year late.[35] Because of an error when inputting his release date into the prison system's record-keeping database, Salinas was left off the Sentencing Commission's list of *Johnson*-eligible prisoners, so the FPD didn't contact him about *Johnson* or file a motion on his behalf.[36] The court found that tolling was appropriate because the record-keeping error, which was outside of Salinas's control, prevented him from finding out about *Johnson* and receiving assistance from the FPD.[37] In considering diligence, the court noted that there was no reason for Salinas to file a § 2255 motion based on *Johnson* before he discovered that it existed and applied

---

[31] *Id.* at 310.
[32] *Id.*
[33] *Id.*
[34] *Id.* at 314.
[35] *Salinas v. United States*, 2018 WL 6933150 at *6 (N.D. Tex. Nov. 29, 2018).
[36] *Id.* at *2.
[37] *Id.* at *4–5.

7

to his circumstances.[38] But once Salinas found out that he was eligible for § 2255 relief, he took immediate action, and was therefore reasonably diligent under the circumstances.[39]

Dillard found himself in the same position as Wilson and Salinas. Upon transferring from state to federal custody, he learned about *Johnson* for the first time—over two-and-a-half years late. Like those petitioners, Dillard was inadvertently left off the list of *Johnson*-eligible prisoners but was reasonably diligent under the circumstances because he immediately took steps to file his § 2255 motion once he found out about this avenue for relief.[40]

The government argues that Dillard was not reasonably diligent because he took no action to pursue his rights before writing the FPD in February. It suggests that Dillard could have filed his petition pro se or contacted the court to receive assistance in filing his petition. But the government ignores the key point: Dillard didn't know he had an avenue for § 2255 relief until well after the limitations period had passed. Though many prisoners file § 2255 petitions pro se, they do so because they know that relief is available to them. Similarly, while many prisoners contact the court to receive status updates, those who do so make contact because they have cases pending. The government cites no precedent to support its argument that Dillard should have taken those actions when he had no knowledge that *Johnson* existed. It is unreasonable to say that a prisoner must contact the court on a regular basis to seek out new case law that could open the door to § 2255 relief, especially given that courts cannot give legal

---

[38] *Id.* at *5.

[39] *Id.* at *5–6.

[40] *See also Gibbs*, 767 F.3d at 890–91 (holding that a prisoner was reasonably diligent in not pursuing federal habeas relief because he believed, erroneously, that his state petition for post-conviction relief was still pending).

8

advice. To expect Dillard to have taken any of these steps "improperly raises the standard from 'reasonable' to 'maximum feasible' diligence."[41]

If Dillard's delay precludes him from seeking relief and it turns out that his ACCA sentence is unlawful, he will serve a sentence that is, at minimum, seven years longer than it should be. The doctrine of equitable tolling exists to prevent such unjust outcomes. Extraordinary circumstances beyond Dillard's control prevented him from pursuing this avenue of relief within the applicable statute of limitations, and Dillard was reasonably diligent in pursuing his rights under the circumstances. The one-year statute of limitations was therefore tolled until Dillard's discovery of *Johnson* in February 2019, so Dillard's motion—filed on March 15, 2019—is timely. I therefore deny the government's motion to dismiss Dillard's § 2255 motion as untimely. But I cannot rule on the merits of Dillard's motion because the parties haven't fully briefed those issues. I therefore order the government to file a response to the merits of Dillard's motion by August 7, 2019. Once the government files its response, Dillard has 30 days to file a reply.

**Conclusion**

IT IS THEREFORE ORDERED that the government's motion to dismiss **[ECF No. 75] is DENIED**.

//

//

//

---

[41] *Gibbs*, 767 F.3d at 891 (quoting *Holland*, 560 U.S. at 653).

9

IT IS FURTHER ORDERED that the government file a response to the merits of Dillard's § 2255 motion by August 7, 2019.  Once the government files its response, Dillard has 30 days to file a reply.

Dated: July 8, 2019

_____
U.S. District Judge Jennifer A. Dorsey